UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
DAHIANA CAPELLAN,

                     Plaintiff,

   -against-

MICHAEL SMYTH, SHIELD NO. 420; PETE MASSA, SHIELD NO. 02193; KEVIN MAZZA, SHIELD NO. 07891; DANIEL RIVERA, SHIELD NO. 07978; RAPHAEL ITURRALDE, SHIELD NO. 0711; ADRIANO CONTRERAS, SHIELD NO. 02116; JOHN RAMOS, SHIELD NO. 4507; JOSE VARGAS, SHIELD NO. 106747; LOUIS BATISTA, SHIELD NO. 01404; CHRISTOPHER VONKESSEL; JOHN AND JANE DOE 1 THROUGH 8 (INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITIES, THE NAMES JOHN DOE AND JANE DOE BEING FICTITIOUS AS THE TRUE NAMES ARE PRESENTLY UNKNOWN),

                     Defendants.
------------------------------------------------------------------------X

*FIRST AMENDED COMPLAINT*

Docket No.
   1:15-cv-9815

ECF CASE

Plaintiff DAHIANA CAPELLAN, by her attorney John Paul DeVerna, Esq. of DeVerna Law, for her complaint against the above Defendants alleges as follows:

**PRELIMARY STATEMENT**

1. This is a civil rights action in which Plaintiff seeks relief through 42 U.S.C. §1983 and 42 U.S. §1988 for the violation of his civil rights protected by the Fourth and Fourteenth Amendments to the United States Constitution.

2. Defendants' counsel, Shira Siskind Esq. consents to the filing of this first amended complaint.

3. The claim arises from a September 4, 2015 incident in which Defendants, acting under color of state law, unlawfully stopped, seized and arrested Ms. Capellan without probable cause.

1

Ms. Capellan initially spent approximately 24 hours unlawfully in police custody. At her arraignment bail was set and she remained in custody until September 5, 2015 at approximately 8:00PM when she made bail. In total she spent nearly 43 hours incarcerated. On or about November 12, 2015 Ms. Capellan's case was dismissed and sealed.

4. Plaintiff seeks monetary damages (special, compensatory and punitive) against Defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION

5. This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. §1983 and §1988.

6. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4).

## VENUE

7. Venue is laid within the Southern District of New York in that a substantial part of the events giving rise to the claim occurred within the boundaries of the Southern District. 28 U.S.C. § 1391 (b).

## PARTIES

8. Plaintiff DAHIANA CAPELLAN ("Plaintiff" or "Ms. Capellan") resided at all times in Bronx County, in the City and State of New York.

9. Defendant Michael Smyth, Shield No. 420 ("Smyth") was, at all times here relevant, a detective employed by the NYPD and as such was acting in the capacity of an agent, servant and employee of the City of New York. Defendant Smyth was, at the time relevant herein, a Detective under Shield # 420 in the Narcotics Borough Bronx. Defendant Smyth is sued in his individual capacity.

10. Defendant Pete Massa, Shield No. 02193 ("Massa") was, at all times here relevant, a Sergeant employed by the NYPD and as such was acting in the capacity of an agent, servant and employee of the City of New York. Defendant Massa was, at the time relevant herein, a Sergeant under Shield # 02193in the Narcotics Borough Bronx.  Defendant Massa is sued in his individual capacity.

11. Defendant Kevin Mazza, Shield No. 07891 ("Mazza") was, at all times here relevant, a detective employed by the NYPD and as such was acting in the capacity of an agent, servant and employee of the City of New York. Defendant Mazza was, at the time relevant herein, a Detective under Shield # 07891in the Narcotics Borough Bronx.  Defendant Mazza is sued in his individual capacity.

12. Defendant Daniel Rivera, Shield No. 07978 ("Rivera") was, at all times here relevant, a detective employed by the NYPD and as such was acting in the capacity of an agent, servant and employee of the City of New York. Defendant Rivera was, at the time relevant herein, a Detective under Shield # 07978 in the Narcotics Borough Bronx.  Defendant Rivera is sued in his individual capacity.

13. Defendant Raphael Iturralde, Shield No. 07114 ("Iturralde") was, at all times here relevant, a detective employed by the NYPD and as such was acting in the capacity of an agent, servant and employee of the City of New York. Defendant Iturralde was, at the time relevant herein, a Detective under Shield # 07114 in the Narcotics Borough Bronx.  Defendant Iturralde is sued in his individual capacity.

14. Defendant Adriano Contreras, Shield No. 02116 ("Contreras") was, at all times here relevant, a detective employed by the NYPD and as such was acting in the capacity of an agent, servant and employee of the City of New York. Defendant Contreras was, at the time relevant

herein, a Detective under Shield #02116 in the Narcotics Borough Bronx and is currently stationed at the 23rd Precinct.  Defendant Contreras is sued in his individual capacity.

15. Defendant John Ramos, Shield No. 4507 ("Ramos") was, at all times here relevant, a detective employed by the NYPD and as such was acting in the capacity of an agent, servant and employee of the City of New York. Defendant Ramos was, at the time relevant herein, a Detective under Shield # 4507 in the Narcotics Borough Bronx.  Defendant Ramos is sued in his individual capacity.

16. Defendant Jose Vargas, Shield No. 106747 ("Vargas") was, at all times here relevant, a detective employed by the NYPD and as such was acting in the capacity of an agent, servant and employee of the City of New York. Defendant Vargas was, at the time relevant herein, a Detective under Shield # 106747 in the Narcotics Borough Bronx.  Defendant Vargas is sued in his individual capacity.

17. Defendant Louis Batista, Shield No. 01404 ("Batista") was, at all times here relevant, a detective employed by the NYPD and as such was acting in the capacity of an agent, servant and employee of the City of New York. Defendant Batista was, at the time relevant herein, a Detective under Shield # 01404 in the Narcotics Borough Bronx.  Defendant Batista is sued in his individual capacity.

18. Defendant Christopher Vonkessel, ("Vonkessel") was, at all times here relevant, a lieutenant employed by the NYPD and as such was acting in the capacity of an agent, servant and employee of the City of New York. Defendant Vonkessel was, at the time relevant herein, a lieutenant in the Narcotics Borough Bronx.  Defendant Vonkessel is sued in his individual capacity.

19. At all times relevant Defendants John and Jane Doe 1 through 8 were police officers,

detectives, supervisors, policy makers and/or officials employed by the NYPD. Plaintiff does not know the real names and/or shield number of Defendants John and Jane Doe 1 through 8.

20. At all times relevant herein, Defendants John and Jane Doe 1 through 8 were acting as agents, servants and employees of the City of New York and the NYPD. Defendants John and Jane Doe 1 through 8 are sued in their individual and official capacities.

21. At all times here mentioned Defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## FACTUAL CHARGES

22. On September 4, 2015, approximately 1:15AM, Defendant Smyth, along with other Defendants, and other members of the New York City Police Department team (John Does 1-8) arrested Plaintiff Dahiana Capellan at 2007 Davidson Avenue, Apartment 1H, Bronx, New York (hereafter, "subject location").

23. The subject location is a two bedroom apartment.

24. Plaintiff was renting a room (hereafter, "bedroom #2") at the subject location from another individual, "N.A", who slept in another room (hereafter, "bedroom #1").

On September 4, 2015, at approximately 1:15AM, Ms. Capellan was inside of bedroom #2 laying in her bed when she heard a loud noise, which based on information and belief was the sound of Defendants Massa, Mazza, Rivera, Iturralde, Contreras, Ramos, Vargas, Batista, as well as unidentified Defendants breaching the front door of the subject location.

25. At that approximate date and time, Ms. Capellan was not committing any crime or violating any law or local ordinance.

26. At that approximate date and time, Ms. Capellan was wearing undergarments.

27. Defendants Massa, Mazza, Rivera, Iturralde, Contreras, Ramos, Vargas, Batista, as well as unidentified Defendants entered the apartment, had their weapons drawn, and approached bedroom #2

28. Defendants Massa, Mazza, Rivera, Iturralde, Contreras, Ramos, Vargas, Batista, as well as unidentified Defendants pointed their loaded firearms at Plaintiff, cursed at her, and ordered her to the ground.

29. Defendants including Massa, Mazza, Rivera, Iturralde, Contreras, Ramos, Vargas, Batista, as well as unidentified Defendants then, acting in concert, grabbed her arms, twisted her arms, and unlawfully handcuffed Ms. Capellan in an excessively tight manner, causing pain and marks to her wrists.

30. Defendants refused Ms. Capellan's request to loosen the handcuffs even though she indicated they were causing her a great deal of pain.

31. Ms. Capellan did not resist arrest.

32. The Defendants did not observe Ms. Capellan committing any crime or violating any law or local ordinance.

33. Defendants asked Ms. Capellan which was room was hers and she indicated bedroom #2.

34. Ms. Capellan sought permission to get dressed in appropriate attire and her request was denied by the Defendants.

35. Unknown Defendants searched Ms. Capellan's person.

36. No contraband or anything of illegality was found on Ms. Capellan.

37. Defendants continued to observe Ms. Capellan.

38. Defendants searched bedroom #2.

39. No contraband or anything of illegality was found in bedroom #2.

40. During Defendant's search of bedroom #2 they searched Ms. Capellan's purse, observed her identification card, and threatened her with deportation.

41. Based on information and belief, unknown Defendants went to the bathroom near bedroom #1 and detained "N.A.".

42. Defendants initially searched the subject location for approximately 25 minutes.

43. Defendants later moved Ms. Capellan to the living room where she sat upon a chair while handcuffed for 5-10 minutes, dressed in only her undergarments, while Defendants continued searching the subject location.

44. Unknown Defendants, at some point indicated in sum and substance, "we have a hit" and "we found the gun".

45. Based on information and belief a .45 caliber Ruger semiautomatic pistol was found inside of bedroom #1.

46. Based on information and belief "N.A" told Defendants bedroom #1 is his room.

47. After the gun was found in bedroom #1, Ms. Capellan was permitted to enter bedroom #2 and dress into more appropriate attire.

48. Defendants refused to give Ms. Capellan privacy and instead watched her while she dressed.

49. After Ms. Capellan dressed, Defendants searched the subject location for approximately 30 additional minutes.

50. Defendants search left bedroom #2 and the subject location in disarray.

51. Defendants took Ms. Capellan's phone and passed it amongst themselves while they looked at its contents, laughed, and made lewd comments to Ms. Capellan.

52. Defendants, including Smyth, placed Ms. Capellan under arrest.

53. Defendants did not have probable cause or reasonable suspicion to detain or arrest Ms. Capellan.

54. Based on information and belief, Defendants, including Defendant Vonkessel, a supervisor, was present on the scene and did not stop the unlawful arrest of Ms. Capellan.

55. Defendants then placed Ms. Capellan into an NYPD vehicle and drove to the 46th Precinct.

56. Defendants failed to secure Plaintiff using a passenger safety device (seatbelt) while transporting Plaintiff to the 46th Precinct.

57. Defendants intentionally drove to the 46th Precinct in an unnecessarily aggressive manner.

58. Because Ms. Capellan was handcuffed and unable to brace herself, Defendants intentional aggressive driving caused Ms. Capellan to suffer injuries to her head, neck, body, and limbs.

59. Ms. Capellan was unlawfully held in police custody for approximately 24 hours before being arraigned.

60. At her arraignment bail was set and she remained in custody until September 5, 2015 at approximately 8:00PM when she made bail.

61. In total she spent nearly forty three hours incarcerated.

62. On September 23, 2015, Ms. Capellan testified before the Grand Jury and thereafter, the Grand Jury voted to dismiss the charges against Ms. Capellan.

63. On or about November 12, 2015, Ms. Capellan's case was dismissed and sealed.

64. Defendants, acting with malice, conveyed false information to prosecutors in order to

8

have plaintiff prosecuted for Criminal Possession of a Weapon in the Second Degree.

65. Defendants, including Defendants Smyth, prepared false sworn affidavits and false police reports relating to Ms. Capellan's arrest.

66. Defendants, including Defendant Smyth, repeatedly falsified information relating to the facts and circumstances surrounding Ms. Capellan's arrest.

67. Those reports were forwarded to one or more prosecutors at the Bronx County District Attorney's office.

68. Upon information and belief, Defendants spoke to one or more prosecutors at the Bronx County District Attorney's office and falsely informed them that Ms. Capellan unlawfully possessed a weapon.

69. During all of the events described, Defendants acted maliciously, willfully, knowingly and with the specific intent to injure Ms. Capellan and violate her civil rights.

70. At all times relevant hereto, Defendants were involved in the decision to arrest Ms. Capellan without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting Ms. Capellan without probable cause.

71. At all times relevant hereto, Defendants were involved in the decision to violate Ms. Capellan' civil rights, including falsely arresting Plaintiff, and failed to intervene in the actions of their fellow officers.

72. As a direct and proximate result of the acts of Defendants, Ms. Capellan suffered the following injuries and damages: violation of her rights pursuant to the Fourth and Fourteenth Amendments of the United States Constitution, physical pain and suffering, emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety, loss of wages, loss of liberty, harm to reputation, and loss of

employment.

## FIRST CAUSE OF ACTION
Unlawful Stop and Search
42 U.S.C. § 1983 Against Individual Defendants

73. The above paragraphs are here incorporated by reference as though fully set forth.

74. Defendants violated the Fourth and Fourteenth Amendments because they stopped and searched Plaintiff without reasonable suspicion.

75. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages herein before alleged.

## SECOND CAUSE OF ACTION
False Arrest and False Imprisonment
Under 42 U.S.C. § 1983 Against Individual Defendants

76. The above paragraphs are here incorporated by reference as though fully set forth.

77. The Defendants violated the Fourth and Fourteenth Amendments to the U.S. Constitution by wrongfully and illegally arresting, detaining and imprisoning Plaintiff.

78. The wrongful, unjustifiable, and unlawful apprehension, arrest, detention, and imprisonment of Plaintiff was carried out without a valid warrant, without Plaintiff's consent, and without probable cause or reasonable suspicion.

79. At all relevant times, Defendants acted forcibly in apprehending, arresting, and imprisoning Plaintiff.

80. Throughout this period, Plaintiff was unlawfully, wrongfully, and unjustifiably held under arrest, deprived of her liberty, imprisoned and falsely charged.

81. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

### THIRD CAUSE OF ACTION
Denial of Right to Fair Trial
Under 42 U.S.C. § 1983 Against Individual Defendants

82. The above paragraphs are here incorporated by reference as though fully set forth.

83. The individual Defendants created false evidence against Plaintiff, to wit, sworn documents and testimony alleging that Ms. Capellan unlawfully possessed a weapon in the second degree.

84. The individual Defendants forwarded false evidence to prosecutors in the Bronx County District Attorney's office.

85. In creating false evidence against Plaintiff, and in forwarding false information to prosecutors, the individual Defendants violated Plaintiff's right to a fair trial under the Due Process Clause of the Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

86. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

### FOURTH CAUSE OF ACTION
Failure to Intervene
Under 42 U.S.C. § 1983 Against Individual Defendants

87. The above paragraphs are here incorporated by reference as though fully set forth.

88. Those Defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

89. Accordingly, the Defendants who failed to intervene violated the Fourth and Fourteenth Amendments.

90. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

### FIFTH CAUSE OF ACTION
Deprivation of Federal Civil Rights Against Defendants
Under 42 U.S.C. §§ 1981, 1983, and 1985

91. The above paragraphs are here incorporated by reference as though fully set forth.

92. In an effort to find fault to use against the Plaintiff, defendant officers conspired among themselves, and conspired with others to deprive Plaintiff of his Constitutional rights under 42 U.S.C. §§ 1981, 1983, and the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and took numerous overt steps in furtherance of such conspiracy, as set forth above.

93. Thus defendant officers engaged in a conspiracy designed to deprive Plaintiff of her constitutional and federal rights in violation of U.S.C. §1985.

94. As a result of the foregoing, Plaintiff was deprived of his liberty, suffered physical pain, emotional distress, great anxiety and humiliation, fear and damage to her reputation, and was otherwise damaged and injured.

### SIXTH CAUSE OF ACTION
Malicious Prosecution
Under 42 U.S.C. §1983 Against Individual Defendants

95. The above paragraphs are here incorporated by reference as though fully set forth.

96. By their conduct, as described herein, Defendants are liable to Plaintiff for the violation of her constitutional right to be free from malicious prosecution under the Fourth and Fourteenth Amendments to the United States Constitution.

97. Defendants, acting with malice, initiated a prosecution against Plaintiff and caused her to be prosecuted.

98. The prosecution by Defendants of Plaintiff constituted malicious prosecution in that there was no basis for Plaintiff's arrest, yet Defendants continued with the prosecution, which

was resolved in Plaintiff's favor.

99. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants, jointly and severally, as follows:

a) In favor of Plaintiff in an amount to be determined by a jury for each of Plaintiff's causes of action;

b) Awarding Plaintiff punitive damages in an amount to be determined by a jury;

c) Awarding Plaintiff compensatory damages in an amount to be determined by a jury;

d) Awarding Plaintiff reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 1988; and

e) Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: August 24, 2016
New York, New York

JOHN PAUL DEVERNA
Counsel for the Plaintiff

*/s/ JPDeV*

By: John Paul DeVerna (JD5237)
DeVerna Law
305 Broadway, 14th Floor
New York, NY 10007
(212) 321-0025 (office)
(212) 321-0024 (fax)